UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

CHRISTOPHER GOODVINE,

            Plaintiff,

v.                                              Case No. 25-cv-982-pp

BRADLEY MLODZIK, *et al.*,

            Defendants.

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2), DIRECTING DEFENDANTS TO RESPOND TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION (DKT. NO. 6), GRANTING PLAINTIFF'S MOTIONS TO EXPEDITE (DKT. NOS. 6, 14), DENYING PLAINTIFF'S MOTION FOR LEAVE TO E-FILE (DKT. NO. 11), DECLINING TO RULE ON PLAINTIFF'S MOTION TO MOOT APPEAL (DKT. NO. 19), DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING APPELLATE FILING FEE (DKT. NO. 20) AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A**

---

Plaintiff Christopher Goodvine, who is incarcerated at Waupun Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging violations of his constitutional rights. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, screens his complaint, dkt. no. 1, and orders the defendants to respond to the plaintiff's motion for preliminary injunction, dkt. no. 6. It also addresses the plaintiff's motions to expedite, dkt. nos. 6, 14, his motion for leave to e-file, dkt. no. 11, his motion to moot appeal, dkt. no. 19, and his motion to proceed without prepaying the appellate filing fee, dkt. no. 20.

1

## I. Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On July 11, 2025, the court ordered the plaintiff to pay an initial partial filing fee of $25.55. Dkt. No. 5. The court received that fee on July 28, 2025. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay remainder of the filing fee over time in the manner explained at the end of this order.

## II. Screening the Complaint

### A. Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.   The Plaintiff's Allegations

The plaintiff has filed a thirty-two-page complaint against twenty-three defendants, alleging that they acted with deliberate indifference to his serious medical needs in violation of the Eighth Amendment to the United States Constitution. Dkt. No. 1 at 1-2. Generally, he alleges that he has neuropathy, foot conditions and migraines for which he is prescribed Gabapentin, Rizatriptan, Excedrin with caffeine and Tylenol. Id. at 2. The plaintiff allegedly experiences pain and discomfort when he does not receive these medications. Id. The plaintiff alleges that he is mentally ill and that his behaviors cause him to be placed in the restrictive housing unit (RHU) for disciplinary infractions or suicide watch (observation status). Id. He states that he has been moved from general population to the RHU multiple times without his medications following him. Id. He alleges that on one occasion, he was without his medication for seven days and another time for four days. Id. The plaintiff states that the defendants, including the officers responsible for the delivery of his medication, supervisors, administrative staff and the institution complaint examiner, either refused to deliver his medication from general population to the RHU or turned a blind eye to the failures and refused to intervene. Id. at 2-3. He seeks injunctive relief to ensure his medication promptly follows him throughout the institution. Id. at 3-4.

The plaintiff alleges that when an incarcerated individual transfers from general population to the RHU, Wisconsin Department of Corrections (DOC) policy requires that his staff-controlled medications follow him. Id. at ¶15. At

4

Waupun, the plaintiff allegedly has been transferred to RHU three times without his medication, and he says that he has witnessed this happen to other incarcerated individuals who transfer to the RHU. Id. Correctional officers allegedly distribute medications on the housing units, and they receive training to do so. Id. at ¶17. The plaintiff alleges that Waupun does not have a policy that requires security staff to promptly transfer medication when an incarcerated person transfers to the RHU. Id. at ¶20. Once an individual is transferred and an officer in the RHU notices that his medication has not arrived from the sending unit, the plaintiff says that "the officer is, according to defendants, not responsible for procuring the inmate's meds." Id. The plaintiff states that he complained to the warden's office about this issue, but they did not address it. Id. at ¶¶21-22. The plaintiff alleges that despite numerous letters to defendants Warden Brad Mlodzik, Deputy Warden Krause, Security Director Beck, HSU Manager Wenzel, RHU Supervisor Kirst and RHU Supervisor Gripentrog, they failed to take steps to address the lack of procedures regarding medication distribution shortcomings. Id. at ¶26.

      The plaintiff describes two incidents where his medication allegedly did not promptly follow him when he transferred from general population to the RHU. First, he alleges that on January 2, 2025, he was relocated from general population to the RHU. Id. at ¶27. He states that his staff-controlled medication did not transfer with him, and it was not available to him from noon on January 2, 2025 through noon on January 6, 2025. Id. Defendants RHU Officers Lamas, Dominguez, Pesh, Schetter, Linden and Mitchell allegedly

5

noted during "med pass" that the plaintiff's medication was not on the unit. Id. The plaintiff states that on the medication administration record, these defendants noted "medication not available; security to notify HSU." Id. The plaintiff alleges that despite these defendants saying that they would notify the HSU, none of them tried to procure the plaintiff's medication by following up with supervisory staff or the RHU nurse. Id. As a result of their inaction, the plaintiff allegedly experienced pain from neuropathy, migraines, foot pain, sleeplessness and withdrawal symptoms. Id.

Second, the plaintiff alleges that about four months later, on May 20, 2025, he was moved from general population to the RHU for medical observation because he had stopped eating and drinking. Id. at ¶28. He says that "most" of his medication arrived in the RHU mid-morning on the next day—May 21, 2025—but that his Rizatriptan and Tylenol did not arrive. Id. The plaintiff alleges that from May 20, 2025 through May 26, 2025, defendants RHU Officers Williams, Finn, Ayuk, Schetter, Miller, Jato, Jopp, Peterson, Unit Manager Kirst and RN Chad failed to procure his medication despite knowing that it had been left in general population. Id. The officers allegedly noted that they would notify the HSU, but they did not follow up with supervisory staff or the RHU nurse. Id. The plaintiff states that they knew he was in pain and needed his Rizatriptan and Tylenol. Id. He also alleges that Officer Jetters, Kirst and RN Chad knew of the problem but did not take action to correct it. Id.

In addition to the two alleged instances of the plaintiff's medication not promptly following him to the RHU, he also alleges that on January 15, 2025,

6

when housed in general population, he moved from the E Range to the G Range within the same unit. Id. at ¶29. The plaintiff says that his medication was not moved with him. Id. He allegedly had a migraine and asked Officer Phelps for his medication that afternoon and evening. Id. Phelps allegedly laughed and said the plaintiff would be okay. Id.

The plaintiff alleges that he submitted an inmate complaint after the first January 2025 RHU medication incident, but that institution complaint examiner Schmude mislabeled his complaint issue. Id. at ¶32. The plaintiff allegedly clarified that his issue was that RHU staff did not procure his medication between January 2 and 6, 2025, yet Schmude still had the plaintiff contact a captain in the general population unit to resolve his issue. Id. The plaintiff says that he informed Schmude that he had contacted the captain and others, yet Schmude dismissed the complaint for "failure to cooperate." Id. The plaintiff allegedly appealed to the corrections complaint examiner, who promptly returned the complaint to Schmude for a "prioritized investigation[.]" Id. at ¶33. The plaintiff states that about four months later, Schmude affirmed his complaint. Id.

The plaintiff also allegedly submitted an inmate complaint regarding the May 2025 RHU medication incident. Id. at ¶34. He says that Schmude initially returned the complaint based on the dates the plaintiff provided and the complaint containing more than one issue. Id. The plaintiff says that he tried to submit a proper complaint, but that Schmude failed to process or return the complaint he submitted. Id. The plaintiff alleges that he submitted a complaint

7

regarding Waupun staff members' failure to implement a policy to ensure that medications are promptly transferred when an incarcerated individual is transferred to the RHU. Id. at ¶35. He says that Schmude returned the complaint and did not process it, incorrectly saying that it did not comply with DOC rules. Id.

The plaintiff alleges that Schmude tried to thwart the plaintiff's attempt to seek redress and prevent him from filing inmate complaints. Id. at ¶38. He says that she unreasonably returned or rejected his complaints in retaliation for the plaintiff's successful use of the complaint system for the January 2025 RHU incident. Id.

The plaintiff claims that Pesh, Schetter, Dominguez, Lamas, Linden, Williams, Jetters, Jopp, Phelps, Ayuk, Mitchell, Jato, Finn, Miller and Peterson acted with deliberate indifference when they failed to procure the plaintiff's medications after he transferred to the RHU. Id. at ¶40. He also claims that defendants Mlodzik, Krause, Wenzel, Beck, Kirst, Gripentrog and Schmude acted with deliberate indifference when they failed to correct the issue of incarcerated individuals not receiving their medications in the RHU. Id. at ¶41. The plaintiff claims that Phelps acted with deliberate indifference when he laughed at the plaintiff instead of obtaining his medication while the plaintiff was in general population. Id. at ¶42.

For relief, the plaintiff seeks compensatory damages, punitive damages and injunctive relief. Id. at 32.

C. <u>Analysis</u>

A prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment when he or she acts with deliberate indifference to the serious medical need of an incarcerated individual. <u>Cesal v. Moats</u>, 851 F.3d 714, 720-21 (7th Cir. 2017) (citing <u>Estelle v. Gamble</u>, 429 U.S. 97, 104-05 (1976)). "To state a claim for deliberate indifference for deficient medical care, the plaintiff "must allege an objectively serious medical condition and an official's deliberate indifference to that condition." <u>Id.</u> at 721 (quoting <u>Perez v. Fenoglio</u>, 792 F.3d 768, 776 (7th Cir. 2015)). An objectively serious medical need is one that either has been diagnosed by a physician and demands treatment or is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." <u>Id.</u> (quoting <u>King v. Kramer</u>, 680 F.3d 1013, 1018 (7th Cir. 2012)). The deliberate indifference standard is subjective and requires a plaintiff to allege that the official knew of, but disregarded, a substantial risk to the incarcerated individual's health. <u>Id.</u> (citing <u>Farmer v. Brennan</u>, 511 U.S. 825, 836-38 (1994); <u>Greeno v. Daley</u>, 414 F.3d 645, 653 (7th Cir. 2005)).

The plaintiff alleges that Waupun staff do not transfer incarcerated individuals' medication when the individuals move from general population to the RHU. He says that he is prescribed multiple staff-controlled medications for his serious medical conditions. The plaintiff describes two times that he did not receive his medication after being transferred to the RHU. First, he allegedly did not receive any of his medication from January 2 through January 6, 2025.

9

Second, after being transferred to the RHU on May 20, 2025, he alleges that he received most of his medication the next morning, but not his Rizatriptan and Tylenol. He says that he remained in the RHU until May 26, 2025, and that he never received his Rizatriptan and Tylenol during that time. The plaintiff alleges that he suffered from severe pain and withdrawal symptoms as a result of not having his medications. He says that he witnessed other incarcerated individuals not receiving their medication upon transfer to the RHU.

The plaintiff may proceed on an Eighth Amendment claim against the officers who allegedly did not obtain his medication for him when he was in the RHU: Pesh, Schetter, Dominguez, Lamas, Linden, Williams, Jetters, Jopp, Ayuk, Mitchell, Jato, Finn, Miller and Peterson. He also may proceed against Kirst and RN Chad based on allegations that they did not obtain his medications for him for the second incident. He may proceed against these defendants in their individual capacities.

The plaintiff also alleges that he complained to Mlodzik, Krause, Beck, Wenzel, Kirst and Gripentrog about Waupun's practice of not transferring incarcerated individuals' medication to the RHU and they did not take action to address it. He alleges that they had the authority to address the situation. Liberally construing those allegations, the court will allow the plaintiff to proceed against those defendants in their individual capacities based on their alleged failure to act despite knowing that the plaintiff did not receive his prescribed medication.

The plaintiff sues some of the supervisory defendants in their official capacities based on Waupun's failure to have a policy for medications to follow incarcerated persons who transfer to the RHU. "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989). Therefore, for purposes of obtaining damages rather than injunctive relief, "neither a state nor its officials acting in their official capacities are 'persons' under § 1983." Id.; Sanville v. McCaughtry, 266 F.3d 724, 733 (7th Cir. 2001) (official capacity claims seeking money damages from defendants should have been dismissed on the basis that they may not be sustained under §1983). Of course, a state official in his or her official capacity, when sued for injunctive relief, would be a person under §1983 because "official-capacity actions for prospective relief are not treated as actions against the State." Will, 491 U.S. at 71 n.10 (quoting Kentucky v. Graham, 473 U.S. at 167 n.14). Such claims require that the entity's policy or custom have played a part in the constitutional violation. Hafer v. Melo, 502 U.S. 21, 25 (1991). The plaintiff seeks injunctive relief. He may proceed against Mlodzik in his official capacity based on his claim that Waupun does not have a policy regarding the transfer of prescribed medications to the RHU and that this results in incarcerated individuals not receiving their medication when moved to that unit. See Glisson v. Ind. Dep't of Corr., 849 F.3d 372, 378 (7th Cir. 2017). Because this claim is

effectively against the State, it would be redundant to allow the plaintiff to proceed against other defendants in their official capacities.

The plaintiff alleges that in retaliation for the plaintiff's prior use of the complaint system, Schmude returned and failed to process the inmate complaints the plaintiff tried to submit regarding the May 2025 RHU medication incident. This use allegedly included the corrections complaint examiner returning to Schmude the plaintiff's inmate compliant for a priority investigation after Schmude had dismissed it for failure to cooperate. To plead a retaliation claim, the plaintiff must allege that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the defendants' decision to take the retaliatory action." Perez v. Fenoglio, 792 F.3d 768, 783 (7th Cir. 2015) (quoting Bridges v. Gilbert, 557 F.3d 541, 546 (7th Cir. 2009)). The plaintiff may proceed on a retaliation claim against Schmude in his individual capacity.

That leaves the plaintiff's allegations that on January 15, 2025, Phelps failed to give the plaintiff medication for a migraine after he moved to a different floor in a general population unit. Phelps allegedly laughed at the plaintiff and said that the plaintiff would be "okay." The plaintiff's allegations against Phelps, while related to medication, do not relate to the plaintiff's claim in this case regarding Waupun's failure to have a policy when incarcerated individuals are moved to the RHU. The plaintiff may not proceed against Phelps

12

in this lawsuit and the court will dismiss Phelps. See George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007); Fed. R. Civ. P. 18(a) and 20(a)(2).

### III. Plaintiff's Motion for Preliminary Injunction (Dkt. No. 6)

The plaintiff has filed a motion for a preliminary injunction in which he seeks an order directing defendants Mlodzik, Krause, Beck, Wenzel and Kirst to:

1) Promulgate and enforce a policy requiring security staff to promptly, upon the relocation of an inmate to RHU, transfer that inmate's medications to RHU;

2) Require RHU staff to, within a reasonable time after admission of an inmate to RHU, certify in writing, whether electronically or in the unit log book, whether the inmate recently transferred to RHU medications have arrived and, if not, whom the RHU officer spoke [with] and what actions the officer took to ensure the medications promptly followed the inmate; and

3) Require HSU Manager Wenzel ensure her medication compliance nurse and/or RHU Nurse inquire as to whether each inmate newly relocated to RHU medications arrived promptly.

Dkt. No. 6 at 1-2.[1]

The plaintiff filed a brief and statement of facts in support of his motion for preliminary injunction. Dkt. Nos. 7, 8. The court will order the defendants to respond to that motion and will set a deadline below by which they must do so. As explained in the next section, the defendants are not

---

[1] This filing includes a motion asking the court to expedite screening the complaint and ruling on the plaintiff's motion for preliminary injunction. Dkt. No. 6. The plaintiff subsequently filed another motion to expedite treatment of his motion for preliminary injunction as well as a supplement he filed to the motion. Dkt. No. 14. Because this order screens the complaint and directs the defendants to respond to the plaintiff's motion for preliminary injunction, the court will grant the plaintiff's motions to expedite. The court will address the plaintiff's motion for preliminary injunction once it is fully briefed.

13

required to address the supplemental materials the plaintiff filed in support of his motion (Dkt. Nos. 12, 13).

## IV. Plaintiff's Motion to E-File (Dkt. No. 11)

The plaintiff has filed a motion for leave to e-file bodycam footage. Dkt No. 11. He states that the footage—which is from July 19, July 22 and July 24, 2025—supports a supplement to his motion for preliminary injunction that he filed on the same date. Id. at 1-2. In the plaintiff's supplement to his motion for preliminary injunctive relief, dkt. no. 12, and his supplemental proposed findings of fact, dkt. no. 13, the plaintiff describes issues with his medication that do not relate to the claims upon which the court is allowing him to proceed. For example, the plaintiff says that officers have denied him access to his migraine medication on occasion. Dkt. No. 12 at 1-2. These allegations, while pertaining to medication, do not relate to his claim that he did not receive medication while in the RHU. Similarly, the bodycam footage that the plaintiff asks to file is not related to his claim in this lawsuit. The court will deny the plaintiff's motion for an order to e-file the footage. Dkt. No. 11.

## V. Plaintiff's Motions Related to Appeal (Dkt. Nos. 19, 20)

On October 2, 2025, the plaintiff filed "Plaintiff's Motion for Permission to Take an Interlocutory Appeal and Notice of Intent to Appeal Effective Denial of Motion for Injunctive Relief." Dkt. No. 15. In this filing, which was docketed as a notice of appeal, the plaintiff states that the court's failure to promptly address his motion for preliminary injunction and supplemental materials amounts to a denial of his motion and therefore is reviewable. Id. at 3. He says

14

that he intends to appeal the effective denial of his motion for injunctive relief and/or seek a writ compelling this court to screen his complaint and address his motions. Id. at 4. Alternatively, the plaintiff says that this court may treat his filing as a third motion to expedite. Id.

On October 14, 2025, the plaintiff filed "Plaintiff's Motion to Moot Appeal Taken in This Matter in Lieu of Indicative Ruling. Alternatively, the Court Should Construe This as a Motion Allowed Under Rule 4(a)(4), Fed. R. App. P." Dkt. No. 19 at 1. The plaintiff states that his October 2, 2025 motion for permission to file an interlocutory appeal was not a notice of appeal, and he seeks an "indicative ruling" advising whether the court will address his motion for injunctive relief without further delay. Id. Ten days after the plaintiff filed this motion, the court received from him a motion for leave to proceed without prepaying the appellate filing fee. Dkt. No. 20.

Although the plaintiff says that he did not intend his motion for permission to file interlocutory appeal to be a notice of appeal, the motion says that the plaintiff wants to "take interlocutory appeal of an effective denial of his motions for injunctive relief." Dkt. No. 15 at 4. The motion also says that the court may treat his motion as a third motion to expedite. The court understands the plaintiff's frustration with its delay in screening his complaint and addressing his motion for a preliminary injunction. Based on the plaintiff's motion asking the court to moot his appeal, it appears that the plaintiff's primary objective is for this court to screen his complaint and address his motion. This order screens the complaint and directs the defendants to

15

respond to the plaintiff's motion for preliminary injunction. As stated above, the court will address the substance of the motion once it is fully briefed.

The plaintiff's filings indicate that he wants to proceed with this case in this district court and that his appeal was intended to expedite the court's consideration of his motion for preliminary injunction. It appears that because his complaint has been screened and his motion for preliminary injunction will be addressed once fully briefed, the plaintiff likely no longer wants to pursue his appeal. But this court lacks authority to "moot" the plaintiff's appeal and thus must decline to rule on the plaintiff's motion to moot his appeal. Dkt. No. 19. If the plaintiff no longer wants to pursue his appeal, he may voluntarily dismiss his appeal under Fed. R. App. P. 42(b) by filing a motion in the *court of appeals*. (The court of appeals previously advised the plaintiff that he could do that. See Goodvine v. Mlodzik, No. 25-2747, Dkt. No. 5 (7th Cir. Oct. 17, 2025)). And because it appears that the plaintiff does not want to proceed with an appeal, the court will deny without prejudice his motion for leave to proceed without prepaying the appellate fee. Dkt. No. 20. If the court is wrong, and the plaintiff *does* want to pursue his appeal, he may renew his motion by filing a request asking this district court to renew his motion for leave to proceed without prepaying the appellate fee.

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **ORDERS** that the defendants must respond to the plaintiff's motion for preliminary injunction, dkt. no. 6, by the end of the day on **February 6, 2026**. If he chooses to file a reply in support of his motion, the plaintiff must do so within fourteen days after the defendants file their response.

The court **GRANTS** the plaintiff's motions to expedite. Dkt. No. 6, 14.

The court **DENIES** the plaintiff's motion for leave to e-file. Dkt. No. 11.

The court **DECLINES TO RULE** on the plaintiff's motion to moot appeal. Dkt. No. 19.

The court **DENIES WITHOUT PREJUDICE** the plaintiff's motion for leave to appeal without prepaying appellate filing fee. Dkt. No. 20.

The court **DISMISSES** defendant CO Phelps.

Under an informal service agreement between the Wisconsin Department of Justice and this court, the court will electronically transmit a copy of the complaint and this order to the Wisconsin Department of Justice for service on defendants Bradley Mlodzik, Ms. Krause, Mr. Beck, Jill Wenzel, Mr. Kirst, Lt. Jacob Gripentrog, RN Chad, C. Schmude, CO Pesh, CO Schetter, CO Dominguez, CO Lamas, CO Linden, CO Williams, CO Jetter, CO Jopp, CO Ayuk, CO Mitchel, CO Jato, CO Finn, CO Miller and CO Peterson. Under the informal service agreement, the court **ORDERS** those defendants to file a responsive pleading to the complaint within sixty (60) days.

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$324.45** balance of the filing fee

by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Warden at Waupun Correctional Institution, where the plaintiff is confined.

The court **ORDERS** that the parties must not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[2] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 517 E. Wisconsin Avenue, Room 362
> Milwaukee, Wisconsin 53202

---

[2] The Prisoner E-Filing Program is mandatory for all individuals incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

The court will include a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that the plaintiff may find useful in prosecuting his case.

Dated in Milwaukee, Wisconsin, this 14th day of January, 2026.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**